ALFRED CLARENCE BINGHAM v. STATE.

No. A-10747. May 22, 1946.

(169 P. 2d 311.)

306

DOYLE, J., dissenting.

308

Paul W. Gotcher and Geo. L. Hill, both of McAlester, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES. P. J. This proceeding was instituted by the filing of a petition styled "Petition to Stay Execution" wherein the petitioner, Alfred Clarence Bingham, through his attorneys sought a stay of execution of the death sentence heretofore imposed on the petitioner by the district court of Tulsa county and affirmed by this court on appeal. Bingham v. State, 82 Okla. Cr. 5, 165 P.2d 646.

The petition recites that the petitioner has become insane since his incarceration in the State Penitentiary, that the warden of the State Penitentiary has heretofore suggested his insanity to the county attorney of Pitsburg county, and that pursuant to the statutes of Oklahoma a petition was filed with the district court of Pittsburg county asking the district court to impanel a jury to determine the question of his present sanity. The petition further alleges that a jury was impaneled in the district court of Pittsburg county and rendered their verdict finding the petitioner was sane.

The petition herein asks this court to allow an appeal from the verdict of the jury of Pittsburg county finding the defendant sane, or in the alternative, if we should find there was no legal authority for such an appeal, that this court stay the execution and hold a sanity hearing before the court to determine the question as to whether the defendant's mental condition was such that the appellate court upon humanitarian grounds would stay the execution of the death penalty until the prisoner had been restored to his reason.

The petition was presented to the court just a few hours before the date set for the execution. This is the first time such procedure has been followed in Oklahoma, and because the questions raised were of such importance and the time pending before the execution of the petitioner was so short, this court asked the Governor to grant a 20-day stay of execution to give time for deliberation upon the legal questions presented by the petition and to hold an inquisition into his sanity if this court should assume jurisdiction of such inquiry.

Under the common law, an inquisition to determine the mental condition of a person convicted of crime and under sentence of death, but who, it was alleged, had become insane since rendition of judgment, was under the control of the trial court and that court alone decided when an inquisition was warranted. There was no provision for a jury trial and no appeal would lie from the finding of the court. 4 Blackstone's Commentaries 395; Nobles v. State of Georgia, 168 U. S. 398, 18 S. Ct. 87, 42 L.Ed. 515; People v. Preston, 345 Ill. 11, 177 N. E. 761; Ex parte Chesser, 93 Fla. 291, 111 So. 720; People v. Eldred, 103 Colo. 334, 86 P.2d 248.

This common-law rule stemmed from the authority given in early English history to the sheriff or officer having the prisoner in custody under sentence of death to make an inquisition into his sanity where he had reason to believe that the prisoner had become insane since he had been placed in confinement. The sheriff had authority to call for such assistance as he might see fit to advise with him in the case. No appeal was contemplated and the inquiry was for the purpose of determining the one proposition as to whether the prisoner had become totally bereft of his senses so that he in no way understood why

he was imprisoned or the punishment which was about to be meted out to him.

By statute in many states it is provided for an inquisition into the sanity of a person where the warden of the institution where the prisoner is confined has reason to believe that he has become insane since his incarceration. Oklahoma has such a statute, 22 O. S.1941 § 1005. The common-law rule is modified in Oklahoma to the extent that it conferred jurisdiction on the district or superior court of the county where the institution is situated where the prisoner is confined and provides for a mandatory trial by jury.

Our statute uses the term "insanity" but does not define the meaning of the term nor fix any test to be applied so we must look to the common law for a correct definition of the state of insanity which will prevent the execution of a condemned person.

Counsel attached to the petition a letter from Dr. F. M. Adams, for many years Superintendent of the Eastern Oklahoma Hospital for the Insane, in which Dr. Adams expresses the opinion that the petitioner is insane. It is well to state that there is a vast distinction between medical insanity as that term is generally used, which broadly speaking, means some form of mental distress or mental illness and legal insanity which will under broad humanitarian principles interfere to stay the execution of a death sentence. Under the common law the insanity that will preclude the execution means a state of general insanity, the mental powers being wholly obliterated, and a being in that deplorable condition can make no defense whatsoever and has no understanding of the nature of the punishment about to be imposed. Freeman v. People, 4 Denio N. Y., 9, 47 Am.Dec. 216;

People v. Lawson, 178 Cal. 722, 174 P. 885; In Re Smith, 25 N. M. 48, 176 P. 819, 3 A.L.R. 83; People v. Preston, supra; Bulger v. People, 61 Colo. 187, 156 P. 800.

In Re Smith, supra, the Supreme Court of New Mexico stated the rule thus:

"The test of the question as to whether one about to be executed is sane or insane is whether or not such person, at the time of the examination, from the defects of his faculties, has sufficient intelligence to understand the nature of the proceedings against him, what he was tried for, the purpose of his punishment, the impending fate which awaits him, and a sufficient understanding to know any fact which might exist which would make his punishment unjust or unlawful, and the intelligence requisite to convey such information to his attorneys or the court. If he has, then he is sane; otherwise he is insane, and should not be executed."

This court is an instrument of government, and can exercise only such power as is invested in it. Whosoever exercises power in a constitutional government must do so in compliance with the prescribed rules. For a court to usurp power, notwithstanding it may be for the purpose of righting a supposed wrong, is no less reprehensible than the exercise of a physical force by a mob for a like supposed purpose. Constitutional government cannot exist where either practice is the rule.

We only look to the common law in Oklahoma where procedure in matters of criminal nature are not provided for in the Code. 22 O.S.1941 § 9. However, the provision for an inquisition into the sanity of a person allegedly becoming insane after his incarceration is provided for as heretofore pointed out. This statute is substantially the same as the provision of the common law. There is no provision either under the common law or the statute for a review of the finding of the inquisitorial body. Counsel for the petitioner at the time the petition was filed

conceded that no statutory authority existed for a review by this court of the findings of the jury in the district court of Pittsburg county on the question of the petitioner's present insanity.

The investigation of the sanity of the prisoner is based upon the public will and sense of propriety rather than on a right of the prisoner. The latter is not entitled as a matter of law to a judicial investigation. Any investigation of the mental condition of the prisoner is for the sole purpose of determining whether it would be consistent with public decency and propriety to take away the life of a person who was not sane enough to realize what was being done. Baughn v. State, 100 Ga. 554, 28 S. E. 68, 38 L. R. A. 577; Nobles v. State of Georgia, supra.

This court has stated in the case of Alexander v. State, 71 Okla. Cr. 47, 107 P.2d 811, 812:

"Since the judgment upon a collateral issue is not a final judgment from which an appeal or a writ of error will lie, an order or decision based upon an independent trial of the question as to defendant's present sanity, either before trial, or after conviction, is not reviewable." To the same effect see Murphy v. State, 72 Okla. Cr. 1, 112 P.2d 438.

Under the statute creating the Criminal Court of Appeals and giving it exclusive appellate jurisdiction in criminal cases, it was provided:

"Said court and judges thereof shall have the power to issue writs of habeas corpus; and under such regulations as may be prescribed by law, issue such writs as may be necessary to exercise its jurisdiction; and may prescribe and promulgate such rules for the government of said court as it may deem necessary." 20 O.S.1941 § 41.

This court is wholly without authority to issue any writ unless it is in aid of its appellate jurisdiction. If the question of insanity had been tried under the provisions of our Code and the petitioner had been found sane against the overwhelming preponderance of the testimony, and if every rule of evidence had been violated in the trial, no appeal would lie to this court; and if we have no appeallate jurisdiction, we have no authority to issue any writ of certiorari or in any manner review the action of the district court of Pittsburg county in such collateral proceeding.

The constitutional and statutory provisions creating the Criminal Court of Appeals of Oklahoma is patterned after similar provisions in the laws of Texas creating the Court of Criminal Appeals of Texas. The Court of Criminal Appeals of Texas has had this identical question presented to them for determination under a statute similar to ours, and it held that it was wholly without authority to review the findings of a tribunal finding a condemned man to be sane after his conviction and since his incarceration in the State Penitentiary awaiting execution. Ex parte Morris, 96 Tex. Cr.R. 256, 257 S. W. 894; Ex parte Quesada, 34 Tex. Cr.R. 116, 29 S. W. 473. In each of these cases, the Court of Criminal Appeals of Texas held that they were entirely without power to review the findings of sanity by appeal or by the issuance of a writ for a review by certiorari.

If the condemned has an absolute right of review, the absurd results that might follow therefrom are obvious. For, applying the language of the United States Supreme Court in Nobles v. State of Georgia, supra, a finding that insanity did not exist at one time would not be adjudged as to its nonexistence at another, it would

be wholly at the will of the convict to suffer any punishment whatever; for the necessity of his doing so would depend solely upon his fecundity in making claim after claim of insanity, to be followed by trial upon trial, and review upon review.

"It is generally recognized that to permit convicted persons to arrest the execution of the sentence imposed upon them, by demanding as a legal right an inquisition into their mental condition, would be tantamount to granting them the privilege of thwarting the administration of criminal justice for an indefinite term." 49 A. L. R. 804.

When a person has been adjudged sane under the provisions of our Code by a jury impaneled for such inquisition, the courts of Oklahoma are powerless to interfere with such verdict. The only recourse left to the condemned is through his friends or counsel presenting his plea to the Pardon and Parole Board and through them to the Governor for such relief as they might see fit to give. The fact that the family history of the petitioner shows that many members of his family have been adjudged insane lends support to the contention that is presented that he is suffering from a mental illness. Counsel has stated that no application raising such question has ever been presented to the Pardon and Parole Board. We do not attempt to say here what should be done by counsel for petitioner or by the Pardon and Parole Board or by the Governor. By this opinion we are not attempting to influence the Pardon and Parole Board or the Governor in the exercising of their discretion, as they are the sole judges of the circumstances, including the alleged mental illness of the accused which may influence them to exercise clemency or enforce the execution of the death sentence.

Because of the foregoing reasons, the petition is hereby dismissed.

BAREFOOT, J., concurs. DOYLE, J., dissents.