Fred **TAYLOR**, Jr., Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–17766.

Court of Criminal Appeals of Oklahoma.

March 19, 1973.

George Briggs, Pawhuska, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Fred Taylor, Jr., hereinafter referred to as defendant, was charged and tried for the crime of Murder and was convicted for the crime of Manslaughter in the First Degree in the District Court of Osage County, Case No. CRF–71–997. He was sentenced to serve a term of twenty-one (21) years in the state penitentiary in accordance with the verdict of the jury and a timely appeal has been perfected to this Court.

At the trial, Jesse Doss, a Pawhuska City Police Officer, testified that he was on duty December 4, 1971, at about 2:00 A.M. and that at that time he heard a large blast in the southern part of the town. Doss stated that he traveled in that direction in a patrol car, but that while en route another car approached Doss and stopped alongside of him. According to Doss, James Irvin was driving the other car and the defendant was sitting in the passenger seat. The defendant asked Doss what Doss was going to do about a man that had a gun at a nearby nightclub, called "Slick's." Defendant advised Doss that he could point the man out. Doss further stated that the defendant asked what would happen if the defendant killed this man. At about that time, a pickup truck pulled out from "Slick's" and the defendant stated that the driver of the truck was the man with the gun. Doss let the pickup go past, but followed it and eventually stopped the truck. The driver of the truck was Tom Hunt, and while Doss checked Hunt, a small blast was heard in the direction of "Slick's." Doss immediately started toward the nightclub and spotted the car that he had seen defendant and Irvin in earlier. The car was going in the opposite direction from Doss. Upon arriving at the nightclub, Doss saw a body lying beside a pickup truck. Other officers arrived subsequently. A shotgun shell was found approximately twelve feet from the body and a jack, about three feet long, was lying across the body.

Testimony of Marvin Clark, Deputy Sheriff of Osage County, Oklahoma, substantiated the physical facts as observed by Officer Doss, in regard to the condition and location of the deceased and the shotgun shell, and the jack lying across the deceased.

Danny Laird, a Pawhuska City Police Officer, testified that he was on duty in the early morning hours of December 4, 1971, and that at approximately 2:00 A.M., he had occasion to speak with the defendant while Laird was patrolling the town. Laird stated that defendant related that there was a man with a pistol in his belt at "Slick's" and that he thought the man's name was "Jack." According to Laird, defendant wanted to know if carrying a shotgun was legal and defendant expressed his desire to kill the man with the gun. Subsequently, Laird acted as a backup to Officer Doss.

Doctor H. A. Wurst testified that he was an Oklahoma Medical Examiner within Osage County, that he was called to the

scene of the crime and at that time, he pronounced Ronald Swan dead.

Doctor William Russum testified that he was a pathologist and Deputy State Medical Examiner for the State of Oklahoma, and that he determined the cause of death of Ronald Swan to be a gunshot wound to the chest.

Clara Swan testified that she was the wife of Ronald Swan, the deceased. She stated that on the evening of December 3, 1971, she and the deceased drank beer and visited with friends at several locations prior to going to "Slick's." Swan related that she and the deceased went to this club with many of the same friends that they had been drinking with earlier. She further testified that during the period of time that she, the deceased, and friends were in the club, there was a difficulty between their group and the wife of the defendant. At about 2:00 A.M., Swan, the deceased, and a friend left the club and went to a pickup owned by Jack McGuire. They tried to open the passenger side of the truck, but it was locked. At that point, they turned around in an attempt to go back around to the other side of the pickup and saw James Irvin in front of them. According to defendant, Irvin indicated that the deceased was going to come with them, but the deceased indicated the contrary. Swan also saw the defendant on the other side of the pickup. She stated that Irvin used unsatisfactory language toward her and that this upset the deceased. Swan further stated that when she glanced toward the other side of the pickup, she saw a long shiny object. Swan began to run back to the club and as she was running, heard a blast, glanced back, and saw the deceased fall. She stated that the deceased was not holding any object when she started running toward the club. She further stated that Jack McGuire had a hand gun in his belt during the evening at "Slick's."

Charles Whitehorn testified that he partied with Clara Swan and the deceased on December 3, 1971, and in substance testified to the same events that Clara Swan testified to. Whitehorn stated that Irvin started to grab at or hit the deceased and that the deceased pushed Irvin away. According to Whitehorn, defendant shot the deceased from behind a pickup truck. The defendant and Irvin ran and got into a car and Whitehorn tried to slash one of the tires of the car, but was unsuccessful. Whitehorn also made an unsuccessful attempt to get the license number of the car.

James Irvin testified that he was a lifelong friend of the defendant. He stated that at different periods of the evening of December 3, 1971, he was with the defendant. Irvin further testified that there was a loaded shotgun in his car, that defendant had been evicted from "Slick's" by the owner and that Irvin entered "Slick's" to determine why defendant had been evicted. Upon leaving "Slick's," Irvin approached Clara Swan, the deceased and Whitehorn in the parking lot as testified to by both Swan and Whitehorn. Irvin stated that he scuffled with the deceased and that the deceased got a jack from a pickup truck and started to come toward Irvin. According to Irvin, the deceased then approached the defendant, with the jack positioned as if deceased was going to hit the defendant. Within seconds, Irvin heard a shotgun blast and saw the deceased fall. Irvin identified the shotgun involved in the incident as his.

According to Imogene Taylor, wife of the defendant, she and the defendant went to "Slick's" during the late evening of December 3, 1971. During the evening and early morning hours of December 4, 1971, Mrs. Taylor was in the bar area. She engaged in a hostile conversation with the wife of Jack McGuire. According to Mrs. Taylor, she saw that Jack McGuire had a gun and cautioned the defendant of this fact. Defendant was seeking out the reason for the difficulty between Mrs. Taylor and Mrs. McGuire. Mrs. Taylor stated that the owner of "Slick's" asked her to leave and she and the defendant did just that. Before they could leave the parking lot, however, the deceased and

Jack McGuire had a discussion with the defendant and Mrs. Taylor. Subsequently, defendant dropped Mrs. Taylor off at their home and proceeded on foot to another location. .

Roger Puckett testified that he had seen Jack McGuire pull a gun on defendant at "Slick's" during the early morning of December 4, 1971. Puckett further testified that Jack McGuire pulled a gun on him shortly thereafter. According to Puckett, after leaving the club, he was seated in James Irvin's car along with Puckett's brother and defendant. Roger Puckett saw Irvin and the deceased scuffle, saw the deceased reach for something in a pickup truck, and saw Irvin retreat from the deceased. In the meantime, the defendant had left Irvin's car and taken a gun from the back seat. The deceased subsequently came at the defendant with an object. Roger Puckett heard the gun fire and then Puckett jumped from Irvin's car and ran down a road.

Theopolus Puckett, brother to Roger Puckett, testified in substance to the same events as his brother.

Defendant testified that he was in a back room at "Slick's" shooting dice when defendant's wife had the hostile conversation with Mrs. McGuire. His testimony was in substance the same as his wife's. Defendant stated that after he left his wife at home, he went back to "Slick's" with Irvin. According to defendant, Irvin went into the club, the Puckett brothers got into Irvin's car, and when Irvin came out of the club, Irvin began talking with the deceased. The deceased scuffled with Irvin, defendant left the car and approached the conflict, but retreated to Irvin's car when he saw the deceased pull an object from a pickup. Defendant grabbed a shotgun from the rear seat of Irvin's car and went up to the area where Irvin and the deceased were. The deceased approached the defendant with the object in hand, later to be identified as a jack, and swung at the defendant. Defendant fired the gun at the deceased.

The first proposition asserted by defendant is that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. Where there is conflict in the testimony, it is the exclusive province of the jury to weigh the evidence and search out the truth, and if there is competent evidence to support the jury's findings, this Court will not disturb the verdict on appeal. Enoch v. State, Okl.Cr., 495 P. 2d 411. In the case at bar, the jury was properly instructed as to law, and the evidence, although conflicting, would support a finding that the defendant did not act in self-defense. We are bound by the jury's determination.

Defendant next asserts that the District Attorney committed misconduct in his closing arguments to the jury. In Pickens v. State, Okl.Cr., 450 P.2d 837, this Court cited with approval the case of Valenti v. State, Okl.Cr., 392 P.2d 59, wherein it was stated:

" 'The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the State and defendant have a right to discuss fully from their standpoint the evidence, and the inferences and deductions arising therefrom.' "

Noting the fact that the trial court admonished the jury to remember what the evidence was in overruling defendant's objection to the argument and that the error complained of was not flagrant and of such nature as to be prejudicial to the defendant, this Court will not substitute its opinion for that of the trial judge.

In conclusion, we observe the record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.

BLISS, P. J., and BUSSEY, J., concur.