**Rickey Dale FARMER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–29.**

Court of Criminal Appeals of Oklahoma.

June 30, 1977.

Rehearing Denied July 11, 1977.

Jon M. Masters, Tahlequah, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Rickey Dale Farmer, hereinafter referred to as the defendant, was charged in the District Court, Cherokee County, with the crime of Murder in the Second Degree, in violation of 21 O.S.Supp. 1975, § 701.2, Case No. CRF–75–166. The jury found the defendant guilty of Manslaughter in the First Degree, in violation of 21 O.S.1971, § 711. In accordance with the verdict, the defendant was sentenced to serve a term of four (4) years in the Oklahoma State Penitentiary. From said judgment and sentence, the defendant has brought this timely ·appeal.

The State's first witness was Roger David Ross, a police officer employed by the City of Tahlequah, Oklahoma. He identified State's Exhibit No. 1, as a scale drawing of the scene of the shooting which occurred on December 5, 1975, described the location of buildings and vehicles, and related the physical position of the victim, David Vinzant, who was found dead in his truck. He testified that the victim's hand was on the gearshift of his truck. The witness further testified that the windshield of the truck contained four bullet holes, two of which were concave, and two of which were convex.

The next witness was Kay Ann Sutton Farmer, wife of the defendant. Mrs. Farmer testified that she married the defendant on December 29, 1975. She stated that she had lived with the defendant for several months prior to mid November, 1975, at which time she and the defendant "broke up." Later she established a relationship with the defendant which lasted until the morning of December 5th, 1975. The witness stated that the decedent had stayed at her house on occasion, and they had dis-

cussed marriage. While Mrs. Farmer was dating the decedent, she continued to meet with the defendant at her house. She stated that the relationship among the three of them was not unfriendly. On December 4th, 1975, the decedent spent the night with Mrs. Farmer. On December 5, 1975, the decedent and the witness had a disagreement about whether they were getting married or not, and the defendant was present during this discussion, which occurred in Mrs. Farmer's house. Subsequent to this conversation, the witness went to work in Muskogee, Oklahoma. She also identified a .22 caliber pistol as the one which she kept in her bedroom. She stated that she discovered her gun was missing when she returned from work on December 5, 1975.

The State's next witness was Dr. Lee F. Beamer, who was Assistant Chief Medical Examiner for the State of Oklahoma on December 5, 1975. He testified that he performed an autopsy on the decedent on that day and concluded that the decedent was shot to death by a rifle fired at a distance greater than 22 inches. There were two bullet wounds in the decedent's head and a fragment wound to the shoulder. He further testified that either of the two bullet wounds would have been fatal, and the wounds were consistent with wounds which could have been inflicted by the .308 rifle identified as State's Exhibit No. 23.

Howard Titsworth testified that he was working in his place of business near the scene of the shooting on the morning of December 5, 1975. He testified that he heard two shots and a woman shouting "No, Rick, no." He then heard another shot. He went to the Success Motor Company, and called the police.

The State's next witness was Leon Hammond, who was working at the Success Motor Company on the morning of December 5, 1975, when he heard two reports. He looked out of a window and saw the defendant going down the alley, carrying a rifle. Another man in the alley told the defendant, "Rick, stop. You are going to hurt the children." The defendant replied, "well, he shot at me first." The defendant then walked away from the window and heard a third report.

Jim Carroll then testified for the State. He was working with Howard Titsworth on the morning that the shooting occurred. He corroborated Mr. Titsworth's testimony and identified the woman who shouted at the defendant as Helen Page. He further testified that he heard four shots.

The State's next witness was Norman Fisher, a police officer for the Tahlequah Police Department. He testified that on the morning of December 5, 1975, he responded to a call to investigate an incident in an alley behind Success Motor Company. He examined the decedent's pickup truck, finding the body of the decedent, and a .22 caliber pistol lying between the decedent's feet. The pistol contained six live rounds and two spent cartridges. The witness also identified a .308 rifle given to him at the scene by Officer Walter Kissinger. The rifle contained a spent .308 cartridge. Two other .308 spent cartridges were found at the scene.

The State's next witness was Walter Kissinger, a policeman for the City of Tahlequah, Oklahoma. He stated that he went to the scene of the shooting on December 5, 1975, and entered Mrs. Farmer's home. The defendant was seated at a table. When Officer Kissinger inquired about where the weapon could be located, Bruce Page showed him the gun in the bedroom.

Carl Cloud, a ballistics expert for the Oklahoma State Bureau of Investigation, testified that he had determined that the cartridges found by Officer Fisher were fired by the .308 rifle, which had previously been admitted into evidence.

Jack Goss testified that he examined the decedent's car and concluded that the vehicle was probably in second gear when the shooting occurred.

The State's next witness was Jerry Garner. He stated that he was walking from the Success Motor Company to his place of employment when he heard a gunshot,

closely followed by two other gunshots. Then he saw the defendant run toward the decedent's pickup truck, open the passenger door, take a child out of the truck, and fire a shot into the truck. The defendant then lowered the rifle and pointed it again, but did not pull the trigger. Then the defendant walked back into the house.

Jack Goss was recalled and testified that Kay Sutton Farmer was calm at the time she was questioned.

Kay Sutton Farmer was recalled and stated that she could have told police officers on December 5, 1975, that she and the decedent had planned on getting married.

The defense having previously called a character witness, Nellie Bell, out of time, called Joyce Luna, a nurse at the Tahlequah City Hospital, who testified that she gave Mrs. Farmer a tranquilizer on the morning of December 5, 1975.

R. C. Jones, a policeman for the City of Tahlequah, stated that the defendant offered no resistance when he was arrested.

The defendant's next witness was Helen Page, sister of Kay Sutton Farmer. She testified that she and her husband, Bruce Page spent the night of December 4, 1975, at Mrs. Farmer's house. The witness and her husband were going to move to Langley, Oklahoma, on December 5, 1975, and had arranged to exchange vehicles with the defendant in the morning, so that they could use the defendant's pickup truck in the move. The defendant arrived at Mrs. Farmer's house at approximately 8:00 a.m. on December 5, 1975. The witness testified that there was a discussion that morning between Mrs. Farmer, the decedent, and the defendant. The decedent had asked Mrs. Farmer to tell the defendant that she and the decedent were going to get married. Mrs. Farmer replied, "I'm not going to marry anybody, and right now I've got to think. I won't marry anybody." Mrs. Farmer then left to go to work. The defendant asked the witness if she were going to take the baby with her, and when advised in the affirmative, the defendant said he needed to remove something from his truck because he did not want the baby to be around it. The witness testified that the decedent sat in the living room and appeared to be very upset. Then the decedent and Mrs. Farmer's two children walked outside and got in the pickup truck. The witness returned to the house and heard three shots. She further testified that the defendant told her that he had to do it because the decedent shot at him first.

Roy G. Sperry testified as a character witness for the defendant.

Bruce Page, husband of Helen Page, substantially corroborated his wife's testimony. In addition, he testified that he [Bruce Page] and the defendant were outside, and the defendant was transferring his rifle from his pickup truck to the witness' car, when the decedent fired a shot at him. The defendant returned fire. Then the defendant shot at the decedent again. At this time the children got out of the decedent's pickup truck. The defendant fired another shot at the decedent, and then laid his rifle on the back of the witness' car and went into the house.

On cross-examination, the witness was asked about the statement he made to the police on the day of the incident. He said he did not remember saying that the defendant told him "I can't let David do this to Kay," and that the defendant grabbed his gun.

The defendant testified in his own behalf. He testified that he was currently married to Kay Sutton Farmer and that he lived with her for several months prior to their separation in November, 1975. The defendant stated that he had borrowed a .308 rifle from Marcell Moss to use deer hunting just prior to Thanksgiving. He arrived at Mrs. Farmer's house on December 5, 1975, at approximately 8:00 a.m., in order to exchange vehicles with Bruce Page for the purpose of aiding Mr. Page in moving to Langley, Oklahoma. He entered the house and engaged in a conversation with Mrs. Farmer and the decedent regarding the possible marriage of Mrs. Farmer to the decedent. The defendant went outside to move his rifle from his truck to Mr. Page's

car. The decedent and Mrs. Farmer's children were seated in the decedent's truck when the defendant was transferring his gun from his truck to Mr. Page's car. The defendant testified that the decedent fired a gun at him. Whereupon the defendant returned a shot. He said that the decedent fired another shot, and he returned the fire. The defendant than ran toward the decedent's pickup truck, opened the door to the truck to let the children out, and shot the decedent again. The defendant testified that he shot the decedent again because he was pointing a gun at him.

After the defense rested, the State recalled Rodney David Ross, regarding tapes of the interview of Bruce and Helen Page by police officers conducted on December 5, 1975. The tape recording was admitted into evidence as State's Exhibit No. 25 and played to the jury for the purpose of impeaching the credibility of the testimony of Bruce and Helen Page. The defense attorney objected to the introduction of the tape and moved for a mistrial. This motion was denied.

Deputy Jack Goss was also recalled, and he testified that the passenger's door of the decedent's truck was defective and difficult to open.

■ The defendant's first assignment of error is that the trial court erred in failing to sustain the defendant's demurrer to the evidence at the preliminary hearing and the motion to quash made following the arraignment. The defendant also contends that there was insufficient evidence to support the verdict. In order for a magistrate to bind an accused over for trial, the evidence adduced at the preliminary hearing must be sufficient to show that a·crime was committed and that there was probable cause to believe that the defendant committed that crime. *Kovash v. State*, Okl.Cr., 519 P.2d 517 (1974). A review of the record in this case shows that there was sufficient evidence, and the trial court properly overruled the demurrer. Similarly, the motion to quash was properly overruled. Moreover, the record indicates that the arraignment was held on March 4, 1976, and the motion to quash was filed on March 24, 1976. Therefore, as the defendant did not file the motion to quash prior to entering a plea on the merits, any complaint that the examining magistrate erred is waived. See, *Callaway v. State*, Okl.Cr., 518 P.2d 1277 (1974), and *Hinex v. State*, Okl.Cr., 417 P.2d 339 (1966).

■ The defendant also contends that the evidence at trial was insufficient to support the verdict. This Court has repeatedly held that where there is competent evidence to support the jury's verdict, this Court will not disturb the verdict. *Taylor v. State*, Okl.Cr., 508 P.2d 671 (1973). There was such evidence in the instant case. The testimony reveals that the defendant shot and killed David Vinzant. There exists ample evidence that the defendant did not act in self-defense, but moved toward the decedent with a gun after the firing of the first shot and shot the decedent three times, although the testimony of Dr. Beamer was to the effect that either of the wounds to the head of the decedent would have been fatal.

The second assignment of error is that the trial court erred in admitting the tape recorded statement of Bruce and Helen Page into evidence. The defendant first objects to admission of the tape on the basis that it was evidence which had been suppressed or concealed from the defendant by the prosecutor despite defendant's motion for production and inspection. This motion was made after the preliminary hearing and requested that the State disclose evidence of any witness whose testimony would be favorable to the defendant. It is important to note that Bruce and Helen Page testified for the State at the preliminary hearing. However, at trial they were both defense witnesses. The tape recorded statement in question was made on the day of the shooting, and it was introduced at trial by the State for impeachment purposes.

■ The defendant argues that the actions of the prosecutor violated the spirit if not the letter of *Brady v. Maryland*, 373

U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), wherein the United States Supreme Court held that the suppression of evidence favorable to a defendant violated due process of law, where the defendant had specifically requested the evidence, and the evidence was material either to guilt or punishment. We observe that in the instant case no specific request was made. It was merely a general request for exculpatory matter. See, *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). A prosecutor does not violate his constitutional duty of disclosure unless his omission is of sufficient significance to result in a denial of the defendant's right to a fair trial. *United States v. Agurs, supra.*

In the instant case, the tape recorded statement did not contain exculpatory matter. On the contrary, the statement was used by the State to impeach favorable testimony by defense witnesses. In addition, the failure to disclose his statement did not deny the defendant his right to a fair trial. The defense attorney had an adequate opportunity to discover any information which Bruce and Helen Page could provide, as they were his own witnesses.

We further find that the tape recorded statement was an unsworn statement by witnesses which was taken in the course of investigatory police work. This Court has previously held that a defendant is not entitled to the discovery and inspection of unsworn, prior inconsistent statements made by defense witnesses, *Trowbridge v. State,* Okl.Cr., 502 P.2d 495 (1972), or by witnesses for the State, *State ex rel. Fallis v. Truesdell,* Okl.Cr., 493 P.2d 1134 (1972), unless such statements are exculpatory; *Brady v. Maryland, supra.*

The defendant also contends that it was error for the trial court to admit the statement because it lacked substantive value and was prejudicial to the defendant. We need only observe that this statement was properly admitted as a prior inconsistent statement for the purpose of impeaching the credibility of Bruce and Helen Page, and the trial court clearly advised the jury that they were to consider the tape recorded statement only insofar as it related to the credibility of the witnesses. The court admonished the jury to this effect both before the tape was played and after. Therefore, we conclude that the trial court did not err in admitting the tape recorded statement.

The final assignment of error which the defendant urges is that the trial court erred in instructing on the lesser included offense of Manslaughter in the First Degree because there was no evidence to support that charge. In *Morgan v. State,* Okl. Cr., 536 P.2d 952, 959 (1975), this Court held that:

"... in every future prosecution for murder, wherein the evidence necessitates an instruction upon self-defense, the trial court shall also instruct upon voluntary or first degree manslaughter committed in the heat of passion as a lesser included offense."

In the instant case it was proper to instruct upon the lesser included offense of Manslaughter in the First Degree, as the evidence supported an instruction upon self-defense and such instruction was given. Therefore, this assignment of error is without merit.

For the above and foregoing reasons, the judgment and sentence appealed from should be, and the same is, hereby, *AFFIRMED.*

BRETT, J., concurs in results.