James FISHER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. PC–89–42.

Court of Criminal Appeals of Oklahoma.

Dec. 1, 1992.

As Corrected Dec. 22, 1992.

David Nelson, Attica, NY, John F. Jenswold, Madison, WI, for appellant.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

James Fisher, appellant, was convicted in Oklahoma County District Court Case No. CRF–83–137 of First Degree Murder and sentenced to death. His conviction was affirmed by this Court in *Fisher v. State*, 736 P.2d 1003 (Okl.Cr.1987), *reh'g denied* 739 P.2d 523. The Supreme Court denied certiorari in *Fisher v. Oklahoma*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988). Appellant's application for post-conviction relief was denied by the District Court of Oklahoma County on December 20, 1988. From that denial, appellant has appealed to this Court.

On or about December 11, 1982, appellant met the victim, Terry Neal, and another man named Fadjo Johnson in downtown Oklahoma City. After going to a liquor store, the three men drove to Neal's apartment and, according to Johnson, appellant and Neal engaged in homosexual acts. Appellant broke a bottle over the victim's head and then killed the victim by stabbing him in the neck with the broken bottle. Appellant and Johnson took the victim's television and car. The automobile was later found abandoned outside Jenks, Oklahoma. Appellant was subsequently arrested in Buffalo, New York.

In his first assignment of error, appellant alleges that the trial court erred when it refused to hold an evidentiary hear-

ing to determine if the State used preemptory challenges to exclude blacks from the jury panel in violation of his equal protection rights. There is no evidence before this Court that this issue was ever raised at trial, nor has appellant stated any reason for failing to assert this issue on direct appeal. The case relied upon by appellant, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), had been decided at the time of direct appeal. Matters which have or could have been raised on direct appeal but were not will not be considered in post-conviction proceedings. *Coleman v. State*, 693 P.2d 4, 5 (Okl.Cr. 1984).

Appellant next complains that the trial court committed error when it failed to sequester the jury at the end of each trial day. This issue was not raised by appellant on direct appeal and will not now be considered by this Court. *Stafford v. State*, 731 P.2d 1372, 1374 (Okl.Cr.1987).

█ In appellant's third assignment of error, he argues that exculpatory evidence material to the case was not disclosed to the defense in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The statement referred to by appellant was an unsworn prior inconsistent statement made by Johnson and was not exculpatory in nature. As such, it was not subject to discovery by appellant. *Farmer v. State*, 565 P.2d 1068 (Okl.Cr. 1977).

█ The fourth assignment of error alleged by appellant is that the State failed to give the defense sufficient notice of evidence it intended to rely upon in aggravation of punishment. Again, this alleged error was not raised on direct appeal. Although the case cited by appellant, *Wilson v. State*, 756 P.2d 1240 (Okl.Cr.1988), may have been decided after the time of appellant's direct appeal, *Walker v. State*, 723 P.2d 273 (Okl.Cr.1986), had been previously handed down. *Walker* stands for the same proposition that appellant relies upon in *Wilson*. Consequently, this matter not

raised on direct appeal will not be reviewed in these proceedings. *Stafford*, 731 P.2d at 1374.

Appellant next claims that the trial court erred when it rejected his assertion that his post-arrest statements were improperly admitted at trial because his arrest was unlawful. This allegation has not been previously asserted by appellant, although opportunities were available both at trial and on direct appeal. Accordingly, we will not consider the same in these proceedings. *Id.*

Appellant next asserts that his sentence of death violates the eighth and fourteenth amendments because the "heinous, atrocious, or cruel" aggravating circumstance was applied in an unconstitutionally vague and overbroad manner, and further because the evidence was insufficient to support the jury's findings of this circumstance. Although this issue was not previously raised by appellant, we note that *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), constitutes a subsequent intervening change in the law. Thus, we address this issue below.

█ In *Cartwright*, the United States Supreme Court held that the jury instruction given in that case was unconstitutionally vague in that the terms "heinous", "atrocious" and "cruel" were not sufficiently defined. Consequently, in *Stouffer v. State*, 742 P.2d 562, 563 (Okl.Cr.1987) (Opinion on Rehearing), *cert. denied* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988), this Court held that this aggravating circumstance will be construed to require torture or serious physical abuse. In the instant case, the jury was instructed that the aggravating circumstance was to be directed to crimes where the death of the victim was preceded by torture or serious physical abuse of the victim. This limiting instruction was sufficient to further define the aggravating circumstance and provide objective factors to the jury overcoming the vagueness condemned in

*Cartwright. See also Castro v. State*, 745 P.2d 394, 407 (Okl.Cr.1987), *cert. denied* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988).[1] Regarding appellant's argument that the evidence was insufficient to support the jury's finding of this aggravating circumstance, we note that this issue was addressed on direct appeal pursuant to the above standard. Accordingly, this issue is *res judicata. Coleman*, 693 P.2d at 5.

In the next assignment of error, appellant complains that the "continuing threat" aggravating circumstance is vague and applied in an arbitrary manner, and that the evidence introduced at trial was insufficient to support the jury's finding of this circumstance. Both of these arguments were addressed and rejected on direct appeal. Appellant relies upon *Cartwright* to support his assertion and to gain a second review of this issue. However, *Cartwright* did not alter the law as to the application of the "continuing threat" aggravating circumstance. We have previously reviewed this circumstance and have consistently upheld its validity. *Boltz v. State*, 806 P.2d 1117, 1125 (Okl.Cr.1991); *Liles v. State*, 702 P.2d 1025, 1031 (Okl.Cr.1985), *cert. denied* 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986).[2] Thus, this assignment is dismissed.

█ In his eighth assignment, appellant asserts that the trial court erred in rejecting his claim that he was incompetent to stand trial. This issue was not raised at trial or on direct appeal. The statute governing the competency of a person to stand trial is very clear. Title 22 O.S.Supp.1983, § 1175.2(A), requires the question to be raised by the accused, defense counsel or the district attorney in an application for determination of competency. No such action was taken by any of the parties. Ap-

pellant argues that the defense's unsuccessful attempt to gain a temporary continuance because of the question of the effect of medication taken by appellant during the trial should have alerted the trial court that appellant was incompetent.

It should be noted that after his request for a continuance, appellant took the witness stand and testified. (During an in camera hearing, the chief physician for the county jail testified that the effects of the medication would have worn off by the time appellant testified). Apparently, no one at the trial noted appellant's behavior as unusual or that he was not in control of his mental faculties. This Court is now asked to substitute its judgment for those present at the trial who observed appellant's demeanor firsthand. Appellant has provided insufficient evidence to warrant such action. This assignment is therefore dismissed.

In his post-conviction application before the district court, appellate counsel alleged that appellant "presently suffers from a psychological, emotional and mental disorder which prevents him from understanding the nature and consequences of these proceedings and substantially impairs his ability to rationally communicate with his attorneys." Affidavits from both of appellant's counsel were attached in support of this claim. In the affidavits, counsel assert that it is their opinion, based upon investigation of and personal contacts with appellant, that appellant is not presently competent to assist in this proceeding. Thus, appellant requested *inter alia* that an evidentiary hearing be held to determine his present competency. The State responded that no such hearing was available under the Post–Conviction Procedures Act, 22 O.S.1981, § 1080 et seq., and the district

---

**1.** It continues to be the opinion of this writer that the "especially heinous, atrocious or cruel" aggravating circumstance is unconstitutionally vague both on its face and as applied. *See Foster v. State*, 779 P.2d 591, 594 (Okl.Cr.1989) (Parks, P.J., specially concurring). As a matter of *stare decisis*, however, I yield my view to the majority of this Court.

**2.** Although this writer is "not presently prepared to abandon my opinion regarding the validity of the 'continuing threat' circumstance, I agree with appellant that more definitive guidance is needed." *Boltz*, 806 P.2d at 1126 (Parks, P.J., specially concurring).

court agreed. As his ninth assignment of error, appellant contends the trial court erred when it rejected his claim of incompetence and denied his request for an evidentiary hearing, a competency evaluation, and a stay of proceedings. Appellant has also filed a separate pleading with this Court in which he reasserts his evidentiary hearing request.

 Initially, this Court must determine whether appellant's present competency is a relevant issue at this stage of his appellate proceedings. It is well settled that an accused must be "competent" to stand trial, 22 O.S.1981, § 1175.1 et seq., and to tender a plea of guilty or nolo contendre. *King v. State*, 553 P.2d 529 (Okl. Cr.1976). It is also undisputed that a condemned prisoner must be deemed "competent" to abandon his appeals. *Rees v. Payton*, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966); *Hays v. Murphy*, 663 F.2d 1004 (10th Cir.1981). Furthermore, 22 O.S.1981, § 1005 et seq., requires that an inmate must be "sane" before he is executed. For purposes of execution, this Court has defined the term sanity to include "competency." *Bingham v. State*, 82 Okl.Cr. 305, 169 P.2d 311, 314–15 (1946).[3] Although appellant is a death row inmate, the question of his sanity/competency to be executed is not at issue in this appeal. Appellant contends, however, that if the eighth amendment prohibits the infliction of death upon an insane/incompetent inmate, "it ought surely to bar the march, composed of the various steps through state and federal court, that leads to the death chamber." For the reasons stated below, we decline to announce such a broad rule.

We find that the *ABA Criminal Justice Mental Health Standards* (1989) (hereinafter "Standards") lend substantial guidance to this case of first impression. Standards 7–5.6 and 7–5.7 set forth recommended procedures where the competency of a condemned inmate is called into question. These Standards, which are similar to 22 O.S.1981, § 1005 et seq., provide for a stay of execution in the event an inmate is found to be incompetent. However, neither the Standards nor our statutes address the consequences of such a finding on the appellate process. Nonetheless, we find that the rules promulgated in Standard 7–5.4 ("Mental incompetence at time of noncapital appeal"), set forth a practical and acceptable procedure. Standard 7–5.4 provides:

(b) Mental incompetence of the defendant at time of appeal from conviction in a criminal case should not prohibit the continuation of such appeal as to matters deemed by counsel or by the court to be appropriate.

(i) If, following the conviction of the defendant in a criminal case, there should arise a good faith doubt about the mental competence of the defendant during the time of appeal, counsel for the state or the defendant should make such doubt known to the court and include it in the record.

(ii) Counsel for the defendant should proceed to prosecute the appeal on behalf of the defendant despite the defendant's incompetence and should raise on such appeal all issues deemed by counsel to be appropriate.

(c) Mental incompetence of the defendant during the time of appeal shall be considered adequate cause, upon a showing of prejudice, to permit the defendant to raise, in a later appeal or action for

---

**3.** Before an inmate may be put to death, he must have:

"sufficient intelligence to understand the nature of the proceedings against him, what he was tried for, the purpose of his punishment, the impending fate which awaits him, and a sufficient understanding to know any fact which might exist which would make his punishment unjust or unlawful, and the intelli-

gence requisite to convey such information to his attorneys or the court."

*Bingham*, 169 P.2d at 314–315, quoting *In re Smith*, 25 N.M. 48, 176 P. 819 (1918). This standard, the ability to understand the nature of the proceedings and to effectively and rationally assist counsel, contains the same elements as those set forth in the definition of "competency" under Section 1175.1(1).

postconviction relief, any matter not raised on the initial appeal because of the defendant's incompetence.

Noticeably absent from the above Standards is any requirement that appellate proceedings be stayed in the event an appellant is deemed incompetent. The absence of such a rule is convincingly explained in the Commentary Introduction to Standard 7–5.4:

> Because convicted defendants, like parties to appellate litigation in general, do not participate in appeal proceedings, mental incompetence rarely affects the fairness or accuracy of appellate decisions. Therefore, the standard envisions that appellate or postconviction review procedures will be carried to completion despite an appellant's mental incompetence, provided it later appears that matters important to review could not be presented because of mental incompetence, they should be considered in postconviction review proceedings.

*See* Standard 7–5.4 Commentary for a more detailed discussion of this provision.

■■■■ On the basis of the foregoing, we hold that the existence of a doubt as to an appellant's present mental competency should not serve as a basis to halt state appellate proceedings. Post-conviction review is available for important issues, revealed after an appellant attains competence, which were not raised during an earlier appeal because of incompetence. *See* 22 O.S.1981, § 1086, and Standard 7–

5.4. However, this form of post-conviction relief is not automatic. An "appellant must make a threshold showing of prejudice related to mental incompetence before omitted issues are considered" in a subsequent appeal. Standard 7–5.4 Commentary (footnote omitted). Accordingly, we hold that the trial court did not err in rejecting appellant's incompetency claim or in denying his request for an evidentiary hearing, competency evaluation, or stay of proceedings. For the same reasons, we also reject appellant's renewed request for an evidentiary hearing to be held in conjunction with this appeal.[4]

■■■ Citing *Parks v. Brown*, 860 F.2d 1545 (10th Cir.1988), appellant next contends that his sentence should be vacated because the jury was given the so-called "anti-sympathy" instruction during the second stage of his trial. Initially, we find the instructions given in this case to be virtually identical to those given in *Fox v. State*, 779 P.2d 562 (Okl.Cr.1989), *cert. denied* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990), where this Court distinguished the instructions from those given in *Parks*. As we stated in *Fox*, "when viewed as a whole, ... the entire instructions delivered a correct interpretation of the law." *Fox*, 779 P.2d at 575. Furthermore, *Parks* was reversed by the United States Supreme Court in *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). Therefore, we find no error.[5]

Appellant also attacks several other aspects of the second stage instructions. He

---

**4.** It is the opinion of this writer that this case presents an exception to the general rule. A post-conviction proceeding before this Court represents the final appeal an appellant can pursue before he has exhausted his state remedies. I therefore find it an appropriate vehicle through which the issue of appellate competency may be raised. Such procedure would ensure that a post-conviction appellant is given the opportunity, upon a proper showing, to raise any pertinent matter not previously raised because of his incompetence, and will promote finality of judgment at the state level, thereby minimizing collateral attacks.

Appellate counsel has indicated that there exists a doubt as to appellant's present mental competency and has supported such with expert documentation. It is my opinion that this case should be remanded for an evidentiary hearing to determine whether any relevant issue has not been raised during the appellate process because of incompetence. However, the text of this opinion represents the view of a majority of this Court.

**5.** For the reasons stated in my separate opinion in *Fox*, this writer continues to view the "anti-sympathy" instruction unnecessary and confusing to the jury where mitigating evidence has been introduced. *Fox*, 779 P.2d at 579. However, I yield my view on this issue to that of the majority as a matter of *stare decisis*.

argues that the court erroneously failed to give a "life-option" instruction, that the instructions failed to make it clear that the jury at all times had the option of returning a life sentence, and that the instructions allowed jurors to ignore mitigating instructions. Initially, we note that appellant failed to raise these issues on direct appeal and that he has cited no relevant authority to excuse such failure. Therefore, these issues are not properly before this Court. *Coleman,* 693 P.2d at 5. Notwithstanding, we have reviewed the record and find that the instructions given were clear and concise, and that they accurately set forth the applicable law.

Appellant alleges in his eleventh assignment of error that the lower court committed error when appellant was not granted a continuance because of the effects of psychotropic medication. This issue was thoroughly reviewed on direct appeal and will not be reviewed anew. *Stafford,* 731 P.2d at 1374.

In his twelfth assignment, appellant argues that his sentence must be modified to life because of the invalidation of the two aggravating circumstances. This assignment is moot as this Court has determined that both aggravating circumstances are valid.

In his final assignment of error, appellant again argues, without proper predicate authority, ineffective assistance of counsel. This matter was exhaustively reviewed on direct appeal and denied. The matter is *res judicata. Coleman,* 693 P.2d at 5.

On the basis of the foregoing, the order of the District Court of Oklahoma County denying post-conviction relief is AFFIRMED.

LANE, P.J., and BRETT, J., concur.

LUMPKIN, V.P.J., concurs in result.

JOHNSON, J., joins LUMPKIN, J., concur in results.

LUMPKIN, Vice–Presiding Judge: concur in results.

I concur in the Court's opinion on each of the allegations of error, especially as we continue to apply the doctrine of res judicata and waiver to the repetitive appeals in cases of this type. However, I cannot agree to the Court's adoption of ABA Criminal Justice Mental Health Standards in disregard of Oklahoma Statutes on the issue of competency during appeal.

This Court should first review the Oklahoma Statutes to determine if a procedure exists to address this issue at the present stage of the proceedings. The Determination of Competency–Procedure is codified at 22 O.S.1981, § 1175.1 et seq. The scope of the procedure is determined by referring to the definition of "criminal proceeding" in Section 1175.1(3):

3. "Criminal proceeding" means every stage of a criminal prosecution **after arrest and before judgment,** including, but not limited to, interrogation, line up, preliminary hearing, motion dockets, discovery, pretrial hearings and trial; (emphasis added)

Therefore, the determination of present competency is not available under our statutes for persons who have been convicted and have appeals of that conviction pending. This statutory procedure, while it conforms to the provisions of Standard 7–5.4 cited by the Court, is the independent State basis upon which this issue should be decided. In addition, the provisions of 22 O.S. 1981, §§ 1005–1008, provide the procedure for determining sanity of a defendant under judgment of death prior to execution. However, that is not the issue presented to this Court and any comment on its application is premature. The Court should also refrain from compounding the problems in practice and application of the law by attempting to merge the concept of present competency with that of sanity.

As the Court correctly relates, neither this Court, nor the United States Supreme Court, has ruled that a defendant must possess a certain level of competence during the course of a direct appeal or subsequent post-conviction proceedings. The issue of present competency during the appeals process has only been addressed in

the post-conviction stage when a question arises about the petitioner's mental fitness to withdraw an application for post-conviction relief. *See, e.g. Hammett v. Texas,* 448 U.S. 725, 100 S.Ct. 2905, 65 L.Ed.2d 1086 (1980). No caselaw indicates that a convicted person must possess an ability-to-assist level of competency throughout the appeals process, as suggested by the Court's cite to the ABA Criminal Justice Mental Health Standards. Only one recent state court decision has dealt with this unique issue. *See People v. Owens,* 139 Ill.2d 351, 151 Ill.Dec. 522, 564 N.E.2d 1184 (1990). However, the resolution of that case was made solely on the application of Illinois statutes, without reference to the ABA Standards. The applicable statutes in Oklahoma are distinctly different. In addition, the 8th Circuit Court of Appeals has considered the ABA Standards and rejected them in determining the level of competency that must exist to execute a defendant. *See Rector v. Clark,* 923 F.2d 570, 572 (8th Cir.1991), *cert. denied,* — U.S. ——, 111 S.Ct. 2872, 115 L.Ed.2d 1038.

This Order seeks to adopt the procedure set forth in ABA Criminal Justice Mental Health Standard 7–5.4. In this case, the Appellant raises no claim that mental incompetence affected the direct appeal from his conviction. Therefore, he should not be able to raise it now.

Appellant only raises a speculative claim that incompetence *might* impair his ability to assist his attorneys. He offers some evidence showing that he may be mentally incompetent, but he provides no facts suggesting this incompetency has adversely affected his ability to obtain post-conviction relief. This Court should not seek to establish a new procedure which is in conflict with existing statutes and the cited authority upon which the Court basis its ruling.

I do not deny the power of this Court to adopt procedures to address viable claims when presented in the proper posture for decision. However, I question both the propriety and basis for the adoption of ABA Standards which are in conflict with

Oklahoma Statutory provisions. These procedures do not expedite the resolution of cases before the Court. Instead, they only serve to further compound the quagmire of repetitious appeals to this Court.