## BANKS AND BANKING—DEPOSITORIES—TAXES.

[Greene (2nd) Court of Appeals, October 31, 1913.]

Allread, Ferneding and Kunkle, JJ.

### IN RE OSBORN BANK.

1. **Bank Receiving Deposits of Township Funds from Township Treasurer Holds Same as Special and not General Deposits.**

 The proviso of Sec. 12873 G. C. exempting the acts of township and other treasurers depositing certain public funds in the banks prescribed from the operation of a drastic criminal statute does not enlarge the authority of such treasurers nor authorize a deposit for other than safe keeping; hence, a bank receiving funds deposited by a township treasurer, no attempt being made to comply with Sec. 3320 G. C. et seq., providing for township depositories, succeeds prima facie to the treasurer's possessory title to such funds and as quasi trustee for their safe keeping as a special and not a general deposit.

2. **Special Deposits of Village Funds in Bank not Depository do not Become General Deposits.**

 Section 4294 G. C. authorizing the deposit of municipal moneys in certain banks as special deposits is intended only to legalize such deposits, retaining the civil liability of the treasurer upon his bond, and there is nothing to warrant any inference that the treasurer's duty or authority over such trust funds is changed, having no authority to convert such funds to his own or any other's use. Hence, village funds deposited in a bank by a village treasurer upon his sole authority do not lose their trust status or become general deposits. Whether the subsequent knowledge or acquiescence of his sureties to such deposits is equivalent to prior assent, quaere.

3. **Taxes Collected and Deposited in Depository Bank are General Deposits.**

 Taxes collected by a deputy county treasurer under Secs. 2746, 2748 G. C. in villages having no local bank of deposit but deposited by him in a designated bank of deposit on the day of payment, complies with the statute whether sent first to the county treasury or in a depository bank, become "undivided tax funds" under Sec. 2737 G. C., and, being entered upon the pass book among the interest bearing deposits and allowed to remain, and entered on treasurer's record as "deposited in depository" and certified by the auditor, constitute such funds general and not special deposits.

APPEAL from common pleas court.

*Frank L. Johnson* and *M. J. Hartley,* for intervening petitioners.

Osborn Bank, In re.

*John C. Shea* and *Frank A. Davis*, for State Banking Department.

**ALLREAD, J.**

These cases arise upon intervening petitions seeking priority of certain public funds as special deposits.

The public funds involved in the intervening petitions are: (1) County funds of Greene county in the sum of $5,383.71; (2) Village funds of the village of Fairfield in the sum of $1,503.72; and (3) Funds of the treasurer of section 16, etc., of Bath township in the sum of $721.87.

The Bank of Osborn, an incorporated banking company located in the village of Osborn, Greene county, Ohio, was on June 18, 1913, closed by the state banking department and is in process of liquidation. There were at the time the bank closed sufficient funds on hands to liquidate the claims represented by the intervening petitions.

The question in issue is: Were the funds deposited under such circumstances as to constitute them special deposits and entitled to preference, or were they merely general deposits?

In consideration of the status of public funds in the hands of a public treasurer we may start with the proposition that such treasurer, under the clearly established law of this state, is a mere custodian of the funds and has no authority by virtue of his office to loan or invest them. *Eshelby* v. *Cincinnati Bd. of Ed.* 66 Ohio St. 71 [63 N. E. Rep. 586].

The preservation of the public funds has under the policy of our state been the subject of special care, and to uphold a transfer of title and an investment of the public moneys a clear legislative expression and a compliance with the prescribed conditions in all of its material features is required.

Where a bank receives from the treasurer public moneys known by it to be such it succeeds *prima. facie* merely to the treasurer's possessory title and as *quasi* trustee for the safe keeping of such funds, and the burden is upon the bank if it claims greater title to show statutory authority and warrant to support its right to convert the funds to its own use.

In respect to the township funds we find there was no attempt to comply with the depository act. These funds were deposited solely upon the authority of the treasurer. The claim that this fund was deposited generally is founded upon the proviso of Sec. 12875 G. C. as follows:

"The provisions of Sec. 12873 shall not make it unlawful for the treasurer of a township, municipal corporation, board of education or cemetery association to deposit public money with a person, firm, company or corporation organized and doing a banking business under the laws of this state or of the United States, but the deposit of such funds in such bank shall not release such treasurer from liability for loss which may occur thereby."

This proviso is a part of a criminal act of a very drastic nature designed to safeguard the public funds. The proviso was intended to except the deposit of certain public funds in certain banks from the operation of the criminal statute. It is not intended to enlarge the authority of the treasurer over the funds nor to authorize more than a deposit for safe keeping.

The village funds were also deposited by the village treasurer upon his sole authority. It is, however, claimed that his sureties knew or afterwards discovered and acquiesced in the deposit of the funds so as to bring the case within the scope of Sec. 4294 G. C., which provides as follows:

"Upon giving bond as required by council, the treasurer may, by and with the consent of his bondsmen, deposit all funds and public moneys of which he has charge in such bank or banks, situated within the county, which may seem best for the protection of such funds, and such deposit shall be subject at all times to the warrants and orders of the treasurer required by law to be drawn. All profits arising from such deposit or deposits shall inure to the benefit of the funds. Such deposit shall in no wise release the treasurer from liability for any loss which may occur thereby."

We do not stop to decide whether subsequent knowledge and acquiescence of the sureties is, within the meaning of the statute, the equivalent of prior assent. We hold that Sec. 4294 is con-

sistent with and is intended only to legalize special deposits. Like Sec. 12875 G. C., the civil liability of the treasurer upon his bond is retained and there is nothing to warrant the inference that the treasurer's duty or authority over the trust funds was to be vitally changed. The treasurer had no authority to convert the funds to his own use and it follows that he had no authority to authorize another to do so.

It is true that Sec. 4294 contains the provision that all profits upon deposits shall inure to the benefit of the fund. This was intended, in our judgment, not as a license but as a precaution. There were undoubtedly cases when profits on deposits were allowed and paid public treasurers, and the legislature by this provision intended to fix the public policy with reference thereto. As a part of this act the depository law was provided. In this and all other depository laws there are stringent safeguards thrown about the general deposit and investment of public funds. Care is taken as to the amount of interest, the nature of the special security to be given and it is inconceivable that the entire body of the fund was intended to be authorized to be embarked in speculation or investment upon the sole authority of the treasurer and his general bondsmen. The status of the county funds rests upon a more complicated state of facts and depends upon a construction of various sections of the statute.

The funds in controversy and sought to be declared as special deposits represents taxes collected by a deputy treasurer in Bath township on June 13 at Fairfield and on June 14 at Osborn. The villages are both in Bath township and a short distance apart. The collections were made under authority of the following statutes:

"2746. When, in his opinion, necessary, the county treasurer may open not to exceed one office in each township for the receiving of taxes. Such office shall be in a city or village in which is located a bank of deposit. The treasurer, his deputy or clerks, may attend at such office and receive taxes on any day or days prior to the twentieth day of June and the twentieth day of December of each year. They may remove from the county

treasury to the place of collection records necessary for the receiving of taxes upon the day or days so fixed for that purpose."

"2748. For the purpose of transportation, the county treasurer may deposit temporarily in any bank of deposit located at such place of collection any money received in the payment of taxes. A bank or banks receiving any such deposits shall deposit with the county treasurer such securities as the treasurer deems sufficient, subject to the approval of the county commissioners. The liability of the treasurer for any losses of money so deposited shall be the same as provided in this chapter in case of deposits by the county treasurer in county depositaries."

There is a contention that the deputy treasurer was not authorized to open books or receive taxes in the village of Fairfield because of its having no local bank of deposit. But we find no substance in that objection. All the taxes collected there as well as at Osborn were actually deposited in the Osborn bank on the day of their payment, and it remains now to ascertain their status.

The Bank of Osborn was a bank of deposit within the meaning of Sec. 2748, and, therefore, capable of receiving this fund for transportation.

It is also claimed to be a county depository with right to receive funds in that capacity. If the funds were received for transportation, whether a special bond was given or not, the deposit would be special and entitled to preference.

On the contrary, if the funds were lawfully deposited in the bank as county depository and as an interest bearing deposit, the bank had a right to commingle and use the funds for profit, thus creating a general deposit.

It is, therefore, quite important to ascertain in what capacity these funds were held at the time the bank failed. The determination of this question rests upon both law and fact. The legal contention is:

First, that the deputy treasurer was authorized only to deposit the tax collections for transportation, and second, that the funds so collected were not subject to deposit in the official depository.

Osborn Bank, In re.

The deputy treasurer was authorized to represent his principal. The treasurer, therefore, who made the collections of taxes, was authorized to deposit it. There is no statutory requirement, express or implied, that collections under Sec. 2746 G. C. were first to be transported to the county treasury and then to a depository, nor can we conceive of any necessity or consideration of public policy requiring such formality. The authority for transportation is general and may authorize a transportation to a depository as well as to the county treasury.

We are, therefore, inclined to adopt a practical construction of these two statutes and hold that the funds might be delivered directly to the county depository and the process completed by a proper system of bookkeeping.

Upon the question whether these funds were subject to deposit in an official depository we hold they are included in the clause "undivided tax funds" used in Sec. 2737 G. C., and, therefore, subject to deposit in a county depository.

Upon the question of fact we think the inference is clear that a deposit under the depository law was intended. The deposits were entered upon the bank pass book among the interest bearing deposits and allowed to remain. No certificate of deposit was taken as is usual in cases of mere transportation and the fund was entered in the treasurer's record as "deposited in depository" and was so certified to the auditor.

This inference arising from the circumstances is confirmed by the testimony of the deputy treasurer who made the deposits, as follows:

"How did you come to do that of your own volition? (Referring to the deposit in the Osborn bank.) A. It had been the custom. It is one of our legal depositories and if it hadn't been I would have taken a certificate of deposit and deposited it when I came home for the purpose of transportation. We do that at other places—Cedarville, Bowersville and Jamestown.

This brings us to a consideration of the regularity of the designation and qualification of the Osborn bank as a county depository.

The resolution authorizing bids under the depository law fixed the period at two years instead of three. This, was not a. vital error. The designation of depositories thereunder would be good for two years and until a new depository—temporary or permanent—was designated to take the funds.

The act of April 11, 1913, Sec. 2715, G. C., took effect a few days before the depositories were designated. This amendment provided for the designation of two kinds of depository—inactive and active. The inactive depository was intended to receive funds not required for current or immediate use. The active depository was required to be located at the county seat and was designed to meet current and immediate demands.

It does not appear that the commissioners expressly designated any of the depository banks as active or inactive. The call for bids was general and it does not appear that any stipulation in this respect was contained in the bids or in the resolution of acceptance by the commissioners.

The bank of Osborn not being located at the county seat was only eligible as an inactive depository, and the presumption of regularity of official proceedings justifies the inference from the making and acceptance of its bid that the Osborn bank was intended as an inactive depository, and the record may be construed as the equivalent of such designation.

So far as is shown in the evidence the deposits, and especially those in controversy, were of a character to be properly deposited in an inactive depository.

The bond given by the Osborn bank qualifying it as depository was in proper form and duly accepted. The designation and qualification of the Osborn bank as such depository and the deposit of said county funds therein as a public depository, as an interest bearing fund, constitutes the same a general and not a special deposit.

It, therefore, follows that the intervening petitions of the treasurer of section 16 Bath township, and of the village of Fairfield should be sustained, and that of Greene county should be dismissed.

These cases are very interesting and involve very doubtful

questions and a construction of the new set of statutes in relation to depositories, and we are not favored with any direct decisions of any of the courts of the state but we have endeavored to work out what we believe to be a correct solution under the facts in the case.

**Ferneding** and **Kunkle, JJ.,** concur.

---

## EXECUTORS AND ADMINISTRATORS.

[Trumbull (7th) Court of Appeals, February 19, 1914.]

Metcalfe, Norris & Pollock, JJ.

WILLIAM H. LOVELESS v. ERIE RY. ET AL.

**Executor Liable for Rents Collected on Lands of Devisee.**

Rent accruing after the death of the testator under a lease made by him, passes to the devisee of the premises leased, unless otherwise disposed of by the will, and if paid to the executor of the will, he becomes liable to the devisee for money had and received.

[Syllabus by the court.]

APPEAL from common pleas court.

*D. J. Hartwell,* for plaintiff.
*Washington Hyde,* for defendants.

**POLLOCK, J.**

Plaintiff claims that he is the owner of about forty-three acres of land in this county; that under a grant made by Edward Moore, the then owner of this land, the Erie Railroad Company entered upon this land, erected a dam thereon, and are using water therefrom, the railroad company agreeing to pay therefor $100 per annum. Plaintiff claims this money by reason of the devise of this land to him by will of Edward Moore.

The plaintiff brought this action to recover from the railroad company the amount due under this contract after the property vested in him. He made Samuel Q. Marsh, executor