THE FIDELITY & CASUALTY CO. OF NEW YORK *v.* THE UNION SAVINGS BANK CO.

(Decided February 20, 1928.)

*Messrs. Howell, Roberts & Duncan,* for plaintiff. *Mr. Edward C. Turner,* attorney general, for defendants.

THOMAS, J. This case comes into this court on

appeal from the judgment of the court of common pleas. The lower court sustained a demurrer of the defendant to the petition of the plaintiff on the ground that the petition did not contain facts sufficient to constitute a cause of action.

It appears from the petition that the defendant, the Union Savings Bank Company of Yorkville, Ohio, became insolvent, and that its assets were taken over by the state superintendent of banks. The bank, under the provision of the statute, had become a depositary of state funds. At the time of its failure it owed the state a sum of money amountting approximately to $25,000. To secure the deposit the bank furnished a bond with the plaintiff, the Fidelity & Casualty Company of New York, as surety. The bank being unable to pay the state treasurer the amount of the deposit, the surety was required, under the terms of the bond, to satisfy the indebtedness. Thereafter the plaintiff presented to the superintendent of banks a claim for allowance in full, as a preference over the claims of the general depositors of the bank. This the superintendent refused, and this action was instituted asking the court for an order requiring him to do so.

In support of the plaintiff's contention it is urged that the state of Ohio by reason of its sovereign power had such preference over other depositors of the bank, and that plaintiff's claim should therefore first be paid out of the assets of the bank on account of such preference and prerogative of the state; that the plaintiff on paying the state was subrogated to such preferential right. This claim is based on the theory, that except where modified by statute, the common law obtains in Ohio, and that

this right, having been a royal prerogative of the crown of England, is now vested and is inherent in the sovereign power of the government. It is generally conceded that in Ohio, as well as in most states of the Union, the common law has been recognized as a substantial part of our jurisprudence. At one time the Legislature of our state adopted the common law, and the general statutes in aid of the common law adopted by Parliament prior to the fourth year of the reign of James I, but the act, appearing not to be in harmony with the spirit and genius of our government, was repealed in the year 1806.

In the determination of the existence of this prerogative right we find ourselves inquiring whence it came. What is the source of all governmental power in our state? Are the people of our state controlled and limited by the Constitution and laws of any foreign power simply because at a time when the state was without a code the courts adopted the principles and usages of the common law? Is not the only source of sovereign power in the people themselves? When our federal government was organized was it not declared that all power was inherent in the people of this nation, and that they had the exclusive right to organize a government which derived its power from their consent alone? If this is not true, what place has the Declaration of Independence in our governmental structure? This great charter has very appropriately been carried along side by side with our Constitution and our codified statutes. Our opinion is that this declaration is a part of the law of this state, as much so as its Constitution and statutes. Without its adoption and

maintenance there would have been no federal or state constitutions.

We are therefore confronted with a question of constitutional law, and it is necessary for us to consider fundamentals. In doing so we are but carrying out the mandate of the sovereign power expressed in our old state Constitution, as found in Section 18, Article VIII, which reads as follows:

"That a frequent recurrence to the fundamental principles of civil government, is absolutely necessary to preserve the blessings of liberty."

So that we feel warranted to quote from some of these ancient documents. We shall begin with the Declaration of Independence, which says:

"We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable rights * * *. That to secure these rights, governments are instituted among men, *deriving their just powers from the consent of the governed.*"

Section 1 of Article I of the Ohio Constitution is as follows:

"All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property," etc.

Section 28 of Article VIII of the Ohio Constitution of 1802 is as follows:

"To guard against the transgression of the high powers, which we have delegated, we declare, that all powers, not hereby delegated, remain with the people."

Section 19 of Article I, Ohio State Constitution, says:

"Private property shall ever be held inviolate," etc.

The distinguishing and fundamental characteristic of our federal and state governments, as distinguished from European governments, recognizes first and foremost the rights of the individual as against the state. Since the enforced granting of the Magna Charta and other concessions from the English crown, which based its prerogatives on the feudal system, this characteristic has been the glory of the British constitution, and we doubt not that were this prerogative now to be asserted in England, it would be denied by the courts of that country. Our conclusion is that any prerogatives the state may have do not come from the common law, but from the sovereign power of the people, and must be looked for in the grant of powers expressed in the Constitution itself, or at least in the statutes. There is no such prerogative or preferential right in the Ohio Constitution or its statutes, either expressed or implied. When the Constitution was adopted, the people, for themselves collectively and individually, announced that: "All powers not hereby delegated, remain with the people."

Learned counsel have presented excellent briefs, and it may be conceded that the courts of last resort in many of the states have held that such prerogative vests in their state governments. It seems to us that these courts have overlooked the provisions of their Constitutions, as to the powers granted, in assuming that the common law is the source of their powers.

There seem to be no adjudicated cases in this state bearing directly on the question involved, and for

that reason we feel at liberty to adhere to what we conceive to be those principles that are consistent with the maxims of equity. Here we find a surety seeking to be paid out of the funds of the depositors of the bank for the risk the surety assumed. If the contentions of the plaintiff are to be upheld there would be little if any hazard incurred by the surety. Why was the ordinary premium paid the surety if there was not the usual hazard? Why should one depositor, paid interest on its deposit, be preferred over other depositors who perhaps received no interest? Equality is not only equity, but it is the policy of the government expressed in the Constitution. If the Legislature of the state deemed it expedient to allow its state treasurer to loan its money as a business enterprise, why should some of the people profit at the expense of others? Moreover, it seems to us against public policy. If this were permitted, what prudent depositor would allow his money to be placed in a bank which could be thus invaded? Our position is not without authority in this state.

In the case, *In re Liquidation of Osborn Bank,* 1 Ohio App., 140, is to be found a holding applicable to the situation in the case at bar. While in that case a county was a party, the reason of the court applies here. It is true that the county does not possess the sovereignty that the state does, and has only such powers as are expressly granted by statute, yet it must be remembered that the state likewise has only such powers as are expressly granted by the people. In the second proposition of the syllabus it is held:

"County funds deposited in a bank in pursuance

to the county depositary act as an interest-bearing fund constitute a general deposit without preference over general creditors although there are slight but not material or substantial irregularities in the designation of the bank under the depositary law."

A similar holding is announced in 3 Ruling Case Law, 644, under the subject "Banks," in Section 273, as follows:

"But, as applied to insolvent banks in which deposits of public money have been properly made, the better rule seems to be that in the absence of statute or a showing of fact sufficient to create a trust, a claim for public money has no preference over the claims of the general creditors of the bank, but stands on the same footing with them."

The law is plainly enunciated by Chancellor Kent in his Commentaries, 248 (c), in which he says:

"The right of preference of a state in this country does not rest upon the common law, but exists only where given by statute."

The learned author further states, in construing a federal statute granting a preference in a similar case, that it "must be strictly construed being in derogation of the common right of creditors of the same class to be equally paid."

Similar holdings are to be found in the Supreme Court of South Carolina: *State* v. *Harris*, 2 Bailey, 598; *Klinck, Admr.*, v. *Keckley, Exr.*, 2 Hill Eq. (S. C.), 250, 256.

In the case of *Commissioner of Banking* v. *Chelsea Savings Bank*, 161 Mich., 691, the court says at page 706 (127 N. W., 351, 352):

"We do not doubt that the state may provide by legislation for a preference of payment of demands

due to the state. The Legislatures of some of the states and the Congress of the United States have, to some extent, given a preference to demands due to the government. The right to do this is inherent in the state. It is exercised in this state, in a limited way, in the collection of the revenues. It has at all times been, as it now is, within the power of the Legislature to make such provisions for state priority as seemed to be expedient. It has made none for cases like the one at bar. The form of our government, the undoubted power of the Legislature in this behalf, furnish reasons for saying that in adopting the applicable rules of the common law as a part of the law of the state, the people did not adopt and thereby assert an arbitrary, prerogative right to priority of payment of its debts, which was recognized by the common law. In any event, the state has never asserted, and does not now assert, such a right.''

Such preference has been denied by the Supreme Court of the United States in the case of *Cook County National Bank* v. *United States,* 107 U. S., 445, 2 S. Ct., 561, 27 L. Ed., 537. Among other things, the court says:

"With these provisions for security against possible loss for money deposited, it would seem only equitable that the government should call for such security, and, if it prove insufficient, take the position of other creditors in the distribution of the assets of the bank in case of its failure.''

Our conclusion is that any preference or prerogative, such as claimed by the plaintiff, cannot come from the common law, but that it must be derived from the Constitution of the state or statutes. There

is no authority therein granted, and, if so, the state is not authorized to assign it to an individual or private corporation.

The finding of the court therefore is for the defendant. The petition of the plaintiff is dismissed.

*Decree for defendant.*

FARR and ROBERTS, JJ., concur.

THOMAS, J., of the Fourth Appellate District, sitting in place of POLLOCK, J.