OSCN Found Document:COLE v. TRAMMELL

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 COLE v. TRAMMELL
2015 OK CR 13
Case Number: MA-2015-824
Decided: 10/02/2015
BENJAMIN ROBERT COLE, Petitioner, v. ANITA TRAMMELL, WARDEN, OKLAHOMA STATE PENITENTIARY, Respondent.
Cite as: 2015 OK CR 13, __ __

 

 

ORDER DENYING EXTRAORDINARY RELIEF 

¶1 On September 16, 2015, Petitioner, Benjamin Robert Cole, by and through counsel, Susan M. Otto and Thomas D. Hird, filed pleadings in this Court seeking extraordinary relief.[1] Petitioner requests that this Court issue a writ requiring Respondent, Anita Trammell, Warden, Oklahoma State Penitentiary, to notify the District Attorney of Pittsburg County that there is good reason to believe that Petitioner, under judgment of death, has become insane as provided in 22 O.S.2011, § 1005. Petitioner further requests that this Court issue a writ prohibiting Respondent from putting him to death other than by administration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic agent as provided in 22 O.S.2001, § 1014. He has also moved for a stay of his execution, scheduled for October 7, 2015.

PROCEDURAL HISTORY

¶2 Petitioner was tried by jury in the District Court of Rogers County and convicted of First Degree Child Abuse Murder (21 O.S.Supp.2001, § 701.7(C)), for the December 20, 2002, murder of his nine-month-old daughter, Brianna Cole. The jury found the existence of two aggravating circumstances: (1) that Petitioner had been previously convicted of a felony involving the use or threat of violence to the person; and (2) that the murder was especially heinous, atrocious, or cruel. Cole v. State, 2007 OK CR 27, ¶¶ 1-2, 164 P.3d 1089, 1092. The trial court sentenced Petitioner to death in accordance with the jury's recommendation. Petitioner appealed his conviction and sentence to this Court, but we denied relief. Id., 2007 OK CR 27, ¶ 66, 164 P.3d at 1102. He sought certiorari review to the United States Supreme Court but the Supreme Court denied his petition. Cole v. Oklahoma, 553 U.S. 1055, 128 S.Ct. 2474, 171 L.Ed.2d 770 (2008). We denied Petitioner's application for post-conviction relief. Cole v. State, PCD-2005-23, unpub. disp. (Okla. Crim. Jan. 24, 2008).

¶3 Petitioner sought federal habeas corpus relief. On September 1, 2011, the United States District Court for the Northern District of Oklahoma denied his Petition for Writ of Habeas Corpus. Cole v. Workman, 2011 WL 3862143 (N.D. Okla. Sept. 1, 2011). On February 18, 2014, the Tenth Circuit Court of Appeals affirmed the denial of federal habeas corpus relief. Cole v. Trammell, 755 F.3d 1142 (10th Cir. 2014). On October 6, 2014, the United States Supreme Court denied Cole's petition for certiorari review. Cole v. Trammell, 571 U.S. ___, 135 S.Ct. 224, 190 L.Ed.2d 170 (2014).

¶4 On October 10, 2014, the State filed an application with this Court seeking entry of an order scheduling Petitioner's execution. On October 24, 2014, this Court set March 5, 2015, as the date for Petitioner's execution. Petitioner, along with four other Oklahoma prisoners under a sentence of death, filed an action in federal district court under 42 U.S.C. § 1983 contending that Oklahoma's method of execution violated the Eighth Amendment. Petitioner and the other prisoners moved for a preliminary injunction against Oklahoma's lethal injection protocol. The federal district court denied the motion and the Tenth Circuit Court of Appeals affirmed. Glossip v. Gross, 776 F.3d 721, 723-27, 736 (10th Cir. 2015). The United State Supreme Court granted certiorari and on January 28, 2015, stayed Petitioner's execution pending final disposition of his request for a preliminary injunction. Glossip v. Gross, 574 U.S. ___, 135 S.Ct. 1197, 1197, 191 L.Ed.2d 148 (2015). On June 29, 2015, the Supreme Court affirmed the judgment of the Court of Appeals for the Tenth Circuit, dissolved the stay, and held that Oklahoma's method of execution was constitutional. Glossip v. Gross, 576 U.S. ___, 135 S.Ct. 2726, 2736, 2745-46, 192 L.E.2d 761 (2015).

¶5 On that same date, the State filed a second application seeking to schedule Petitioner's execution date. On July 2, 2015, Petitioner filed his objection to the setting of an execution date. In the absence of any proof that sanity proceedings had been properly instituted pursuant to 22 O.S.2011, § 1005 and Allen v. State, 2011 OK CR 31, 265 P.3d 754, we overruled Petitioner's objection and on July 8, 2015, this Court set October 7, 2015, as the date for Petitioner's execution.

¶6 On July 22, 2015, Petitioner, by and through counsel, filed a Petition for Writs of Mandamus and/or Prohibition in District Court of Pittsburg County Case Number CV-2015-58, which requested the District Court require Respondent institute proceedings to determine Petitioner's competence to be executed pursuant to 22 O.S.2011, § 1005, and requested an evidentiary hearing on the issue. Petitioner further sought to prohibit Respondent from putting him to death other than by administration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic agent. On August 17, 2015, the case came on for conference and the District Court directed Respondent to cause Petitioner to speak to his attorneys as well as the mental health professional they had retained.

¶7 On August 25, 2015, the Honorable James Bland, District Judge, denied Petitioner's request for a writ of prohibition and refused counsel for Petitioner's request to order Petitioner sedated and medically examined against his will. However, the District Court granted Petitioner an evidentiary hearing to enable Petitioner an opportunity to meet the high burden of "a substantial threshold showing," this Court recognized in Allen v. State, 2011 OK CR 31, ¶ 9, 265 P.3d 754, 756-57.

¶8 On August 28, 2015, the District Court conducted the evidentiary hearing on the issue of Petitioner's sanity. Counsel for Petitioner introduced some of Petitioner's writings and certain records from the Department of Corrections concerning Petitioner's medical and mental health status. Counsel also introduced the testimony of four witnesses, including a psychiatrist, which the federal public defender's office had retained.[2] Reciting the "substantial threshold showing" from Allen, the District Court determined Petitioner had not met the burden of proof and had not shown Respondent had refused to carry out a clear legal duty.

FACTS

¶9 Petitioner's nine-month-old daughter, Brianna Cole, was murdered on the evening of December 20, 2002. Brianna Cole's spine had been snapped in half and her aorta completely torn through due to non-accidental stretching. The State Medical Examiner ruled the death a homicide and described the official cause of death as fracture of the spine with aortic laceration. Petitioner confessed to causing the fatal injuries. He explained that he'd been trying, unsuccessfully, to get the child, who was lying on her stomach, to stop crying. Petitioner grabbed his daughter by the ankles and pushed her legs toward her head until she flipped over. This action broke the child's back and resulted in the fatal injuries. Afterwards, Petitioner played video games, denied anything was wrong with the child when confronted by his wife, and said nothing to rescue or medical personnel about what had happened. Cole v. State, 2007 OK CR 27, ¶¶ 1-4, 164 P.3d 1089, 1092-93.

¶10 Petitioner's competence has been a central issue in this case. His strong religious beliefs have caused his legal team to challenge his competence. During the pre-trial proceedings, defense counsel, twice, raised a doubt as to Petitioner's competence. Both the State's and the defense's psychologist concluded that Petitioner was competent. Ultimately, a jury determined that Petitioner was competent to stand trial. Cole v. State, PCD-2005-23, unpub. disp. (Okla. Crim. Jan. 24, 2008); Cole v. Trammell, 755 F.3d at 1149-50. Afterwards, Petitioner was less inclined to speak to defense counsel. Cole v. State, 2007 OK CR 27, ¶¶ 10-11, 164 P.3d at 1093-94.

¶11 Petitioner attempted to raise issues concerning his competency during the post-conviction proceedings. Those claims were rejected. Cole v. State, PCD-2005-23, unpub. disp. (Okla. Crim. Jan. 24, 2008).[3] After counsel challenged Petitioner's competency, Petitioner was less inclined to speak with post-conviction counsel. Cole v. Trammell, 2015 WL 4132828, at * 2-3 (N.D. Okla. July 8, 2015).

¶12 The Federal Public Defender's Office proceeded with these same claims during federal habeas corpus review. The claims were rejected. Cole v. Workman, 2011 WL 3862143 (N.D. Okla. Sept. 1, 2011). Initially, Petitioner willingly spoke with the attorneys, investigators, and experts the federal public defender employed in his case. However, Petitioner stopped meeting with anyone from that office after attorney, Ken Lee, investigator, Julie Gardner, and Dr. Rapheal Morris, criticized his ministry. Because Gardner did not understand Petitioner's religious beliefs, she determined in her mind that Petitioner was irrational. Dr. Morris admitted that Petitioner might have been offended when he cited Petitioner's "comfort of being saved by Jesus" as a "primitive coping mechanism" in his report.[4]

¶13 Petitioner had the ability and intelligence to speak to his legal team. His refusal to speak to certain individuals appeared to be a choice on his part. When Respondent attempted to persuade Petitioner to visit with his attorneys, Petitioner informed her that he did not want to visit with them. In July of 2014, Dr. Morris attempted to meet with Petitioner for the purpose of evaluating his competency to be executed, Petitioner indicated that he had seen Dr. Morris before and did not have any more information for him. When Petitioner met with Dr. Morris pursuant to the District Court's order, Petitioner refused to talk to Morris.

¶14 In contrast, Petitioner willingly spoke with Respondent and the psychologists employed by the Oklahoma Department of Corrections. Beginning in January of 2014, the prison psychologists observed that Petitioner showed minor symptoms of mental illness when they spoke with him. Petitioner exhibited looseness of association, poor eye contact, poor hygiene, decompensation, and exhibited signs of possible schizophrenia. Over this same period of time, Petitioner engaged Respondent in numerous intelligent conversations. The conversations were of some length, and Petitioner's responses were more than one-word in length. Petitioner spoke about current events, his background, his execution and scripture. During these conversations, Petitioner indicated that he was aware of his scheduled execution date as well as the fact that he would be put to death by lethal injection. On more than one occasion, Petitioner explained to Respondent that he was being executed because "he murdered his daughter." He stated that it happened in 2002 right before Christmas. (Evid. Hrg. Tr. 83-84, 118-24, 132-34, 144). Petitioner's conversations with Respondent about religion and his quotations of scripture were not radical. (Evid. Hrg. Tr. 136). Petitioner had never informed Respondent there was any other reason for his execution other than the fact that he had murdered his daughter. (Evid. Hrg. Tr. 146).

¶15 Respondent had no doubt in her mind Petitioner understood that he is being executed for murdering his daughter. Respondent did not have good reason to believe Petitioner lacked the competency to be executed.

STANDARD OF REVIEW

¶16 The requirements for the issuance of an extraordinary writ are set forth in Rule 10.1, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2015). For a writ of mandamus, the petitioner has the burden of establishing: (1) he or she has a clear legal right to the relief sought; (2) the respondent's refusal to perform a plain legal duty not involving the exercise of discretion; and (3) the adequacy of mandamus and the inadequacy of other relief. State ex rel. Mashburn v. Stice, 2012 OK CR 14, ¶ 7, 288 P.3d 247, 249; Bednar v. District Court of Kay County, 2002 OK CR 41, ¶ 7, 60 P.3d 1, 3; Woolen v. Coffman, 1984 OK CR 53, ¶ 6, 676 P.2d 1375, 1376-77; Rule 10.6(B), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2015).

¶17 For a writ of prohibition, Petitioner must establish: (1) a court, officer or person has or is about to exercise judicial or quasi-judicial power; (2) the exercise of said power is unauthorized by law; and (3) the exercise of said power will result in injury for which there is no other adequate remedy. State, ex rel., Pruitt v. Steidley, 2015 OK CR 6, ¶ 17, 349 P.3d 554, 558; Bednar, 2002 OK CR 41, ¶ 7, 60 P.3d at 3; Rule 10.6(A), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2015).

¶18 Petitioner challenges the District Court's determination as "plainly erroneous." (Brief in Support of Mandamus, at 29). In cases of this nature, this Court will review pursuant to the clearly erroneous standard, i.e., for an abuse of discretion. Pavatt v. State, 2007 OK CR 19, ¶ 35, 159 P.3d 272, 284 (giving substantial deference to trier-of-fact on issues of fact and witness credibility); Murphy v. State, 2003 OK CR 6, ¶ 11, 66 P.3d 456, 458 (finding trial judge's conclusion that petitioner had not raised sufficient evidence to create fact question on issue of mental retardation not clearly erroneous); C.L.F. v. State, 1999 OK CR 12, ¶ 5, 989 P.2d 945, 946 (applying abuse of discretion standard to trial court's determination appellant had not overcome presumption and proved she should be certified as child or youthful offender); Cargle v. State, 1995 OK CR 77, ¶¶ 21, 25, 909 P.2d 806, 815-16 (reviewing trial court's finding that appellant had failed to make threshold showing of incompetency for an abuse of discretion). We have recognized that an abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the issue; a clearly erroneous conclusion and judgment, clearly against the logic and effect of the facts presented. Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170.

DISCUSSION

¶19 In his Petition for Writ of Mandamus and Brief in Support, Petitioner raises several claims. He challenges the adequacy of the procedure for determining whether he is competent to be executed, asserts that he is incompetent, and argues that the District Court's determination that he failed to establish that he was entitled to relief was erroneous.

¶20 Petitioner argues that the State procedure for handling competency to be executed claims violates the constitution because it leaves the decision to the warden, an official of the executive branch of the State government. The United States Supreme Court in Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (plurality), held that "[t]he Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane." Ford, 477 U.S. at 410, 106 S.Ct. at 2602; Allen v. State, 2011 OK CR 31, ¶ 8, 265 P.3d 754, 756. In Panetti v. Quarterman, 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), the Supreme Court explained the plurality holding in Ford. "Once a prisoner seeking a stay of execution has made 'a substantial threshold showing of insanity,' the protection afforded by procedural due process includes a 'fair hearing' in accord with fundamental fairness." Panetti, 551 U.S. at 949, 127 S.Ct. at 2856, quoting Ford, 477 U.S. at 424, 426, 106 S.Ct. at 2609-10; Allen, 2011 OK CR 31, ¶ 89, 265 P.3d at 756-57.

¶21 Such a hearing "may be far less formal than a trial" but must afford a prisoner an "opportunity to be heard" consistent with the "basic requirements required by due process." Panetti, 551 U.S. at 949-50, 127 S.Ct. at 2856 (citations and quotations omitted). "These basic requirements include an opportunity to submit 'evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination.'" Id., quoting Ford, 477 U.S. at 427, 106 S.Ct. at 2610.

¶22 Section 1005, of Title 22 O.S.2011, provides for a jury of twelve persons to determine the issue of sanity. During that trial, a prisoner under a sentence of death is allowed to submit evidence, call both lay and expert witnesses, and present argument in support of his claim of insanity. Allen, 2011 OK CR 31, ¶ 11, 265 P.3d at 757. Thus, our procedures afford more than the constitutionally mandated due process. Id.

¶23 Although § 1005 provides for the warden to institute such proceedings when "there is good reason to believe that a defendant under a sentence of death has become insane," judicial oversight of the warden's performance of that role is available through mandamus proceedings. See Woolen, 1984 OK CR 53, ¶ 6, 676 P.2d at 1376-77 ("Mandamus is a command from a court of law of competent jurisdiction . . . to some inferior court, tribunal, or board, or corporation or person, requiring the performance of a duty therein specified, which duty results from the official station of the party to whom the writ is directed, or from the operation of law."). Should the district court deny mandamus relief, this Court will entertain a petition for such relief. Rule 10.1(A), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2015).

¶24 Both this Court and the United States Court of Appeals for the Tenth Circuit have issued several unpublished opinions expressly recognizing the adequacy of mandamus review on the issue of competence to be executed.[5] In Allen v. State, 2011 OK CR 31, 265 P.3d 754, we expressly determined that "Oklahoma's procedure on its face complies with the federal constitution." Allen, 2011 OK CR 31, ¶ 9, 265 P.3d at 756-57. As Petitioner has not argued or shown any reason why our decision in Allen was wrongly decided we see no reason to depart from our prior holding. Petitioner's challenge to the procedure for handling competency to be executed claims is denied.

¶25 Turning to Petitioner's challenge to the District Court's determination of his claim, we find that the trial court did not abuse its discretion when it found that Petitioner had not met the burden of proof and had not shown that Respondent had refused to carry out a clear legal duty. A prisoner under a sentence of death must make the necessary "substantial threshold showing of insanity" before he is entitled to an adjudication to determine his condition. Panetti, 551 U.S. at 950, 168 S.Ct. at 2856; Ford, 477 U.S. at 426, 106 S.Ct. at 2610 ("substantial threshold showing of insanity [required] merely to trigger the hearing process."); Murphy v. State, 2012 OK CR 8, ¶ 35, 281 P.3d 1283, 1293.

¶26 The United States Supreme Court in Ford, recognized "that some high threshold showing on behalf of the prisoner will be found a necessary means to control the number of nonmeritorious or repetitive claims of insanity" focused on "providing redress for those with substantial claims." Ford, 477 U.S. at 417, 106 S.Ct. at 2605. There is a presumption that the prisoner is competent. Id., 477 U.S. at 426, 106 S.Ct. at 2610. A prisoner must overcome this presumption and show there is a reasonable probability he is insane. Id., 477 U.S. at 426, 106 S.Ct. at 2610; Leland v. Oregon, 343 U.S. 790, 799, 72 S.Ct. 1002, 1008, 96 L.Ed. 1302 (1952).

¶27 In Bingham v. State, 1946 OK CR 54, 169 P.2d 311, this Court set forth the standard for sanity to be executed:

The test of the question as to whether one about to be executed is sane or insane is whether or not such person, at the time of the examination, from the defects of his faculties, has sufficient intelligence to understand the nature of the proceedings against him, what he was tried for, the purpose of his punishment, the impending fate which awaits him, and a sufficient understanding to know any fact which might exist which would make his punishment unjust or unlawful, and the intelligence requisite to convey such information to his attorneys or the court. If he has, then he is sane; otherwise he is insane, and should not be executed.

Id., 82 Okla. Crim. 305, 311, 169 P.2d at 314-15 (quotations and citation omitted).

¶28 Although the United States Supreme Court did not set forth a precise standard of competency in Ford, the Supreme Court in Panetti recognized that "[a] prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it." Panetti, 551 U.S. at 957, 959, 127 S.Ct. at 2860, 2862. To have a rational understanding, the prisoner's mental state must not be so distorted by delusions or mental illness that his awareness of the crime and punishment has little or no relation to the understanding of those concepts shared by the community as a whole. Id., 551 U.S. at 959-60, 127 S.Ct. at 2861-62. However, the Supreme Court clarified that:

The mental state requisite for competence to suffer capital punishment neither presumes nor requires a person who would be considered "normal," or even "rational," in a layperson's understanding of those terms. Someone who is condemned to death for an atrocious murder may be so callous as to be unrepentant; so self-centered and devoid of compassion as to lack all sense of guilt; so adept in transferring blame to others as to be considered, at least in the colloquial sense, to be out of touch with reality.

Id.

¶29 Turning to the record in the present case, we find that the trial court's determination that Petitioner had not met his burden of a substantial threshold showing of insanity was not clearly against the logic and effect of the facts presented. It is clear from the record that Petitioner was aware of the nature of the proceedings against him, what he was tried for, the purpose of his punishment, and his impending fate. Respondent, Gardner, and Dr. Morris all agreed on this fact. (Evid. Hrg. Tr. 57, 144-51, 225). Petitioner verified this circumstance with his testimony at the hearing. (Evid. Hrg. Tr. 25-26).

¶30 Even though Petitioner has shown minor signs of mental illness, the record reveals that Petitioner's mental state is not so distorted by delusions or mental illness that his awareness of the crime and punishment has little or no relation to the understanding of those concepts shared by the community as a whole. Petitioner's lengthy conversations with Respondent exhibit the mental state requisite for competence to be executed.

¶31 Citing to the testimony of Dr. Morris, Petitioner argues that his understanding is not rational because of certain delusions. However, Morris failed to relate any definitive delusions to the Court but, instead, admitted that Petitioner's fervent religious statements were similar to those held by other members of organized religion.[6] (Evid. Hrg. Tr. 167-70, 185, 221-22). Thus, we find that Petitioner has not overcome the presumption of sanity.

¶32 In reaching this conclusion, we distinguish the present case from the Supreme Court's opinion in Panetti, wherein the Supreme Court found that there was much in the record which supported the conclusion that the petitioner suffered from severe delusions. Panetti, 551 U.S. at 956, 127 S.Ct. at 2860. The Supreme Court in Panetti noted that:

Four expert witnesses testified on petitioner's behalf in the District Court proceedings. One explained that petitioner's mental problems are indicative of "schizo-affective disorder," 1 App. 143, resulting in a "genuine delusion" involving his understanding of the reason for his execution, id., at 157. According to the expert, this delusion has recast petitioner's execution as "part of spiritual warfare ... between the demons and the forces of the darkness and God and the angels and the forces of light." Id., at 149. As a result, the expert explained, although petitioner claims to understand "that the state is saying that [it wishes] to execute him for [his] murder[s]," he believes in earnest that the stated reason is a "sham" and the State in truth wants to execute him "to stop him from preaching." Ibid. Petitioner's other expert witnesses reached similar conclusions concerning the strength and sincerity of this "fixed delusion." Id., at 203; see also id., at 202, 231-232, 333.

Id., 551 U.S. at 954-55, 127 S.Ct. at 2859.

¶33 The record in the present case reveals that Petitioner made numerous fervent religious statements. Because those statements do not involve the State's rationale for executing him, the circumstances of the present case are distinguishable from those in Panetti.

¶34 Petitioner further cites to Gardner's allegation that Petitioner stated that God made him kill his daughter as part of a prophecy. However, we find that the District Court did not abuse its discretion when it failed to put any weight in Gardner's testimony. Gardner admitted that she had no understanding of Petitioner's religious beliefs and could not follow his line of thought. (Evid. Hrg. Tr. 64). She had not communicated any of Petitioner's alleged statements to Respondent. Gardner had never made an affidavit in the case and had not revealed any of her thoughts to the prison staff. (Evid. Hrg. Tr. 65, 68). None of the other witnesses shared Gardner's opinions.[7]

¶35 Petitioner's conversations with Respondent about religion and his quotations of scripture were not radical. (Evid. Hrg. Tr. 136). Petitioner had never informed Respondent that there was any other reason for his execution other than the fact that he had murdered his daughter. (Evid. Hrg. Tr. 146). As there is no credible evidence in the record which connects Petitioner's fervent religious statements with a lack of understanding of his crime and punishment as shared by the community as a whole, we find that the District Court did not abuse its discretion.

¶36 Considering the record in its entirety, we find that there is not a reasonable probability that Petitioner lacks the competency to be executed. As such, we conclude that Respondent did not have a clear legal duty to act under § 1005. Accordingly, Petitioner's Petition for Writ of Mandamus is DENIED.

¶37 In his Petition for Writ of Prohibition and Brief in Support, Petitioner requests that this Court issue a writ prohibiting Respondent from putting him to death other than by administration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic agent as provided in 22 O.S.2001, § 1014. Petitioner was sentenced to death, the maximum punishment for first degree murder. 21 O.S.2011, § 701.9(A). In the Death Warrant the trial court set the method of execution and ordered that Petitioner be put to death "by continuous intravenous administration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic agent until death . . . or in any other manner that may be designated by the laws of the State of Oklahoma." (O.R. 127) (emphasis added). Petitioner asserts that the protocol by which Respondent intends to execute him will unlawfully use a benzodiazepine rather than an ultra-short acting barbiturate.

¶38 This Court has clearly established that the proper method to challenge the execution protocol is to file an application for post-conviction relief. Malicoat v. State, 2006 OK CR 25, ¶ 3, 137 P.3d 1234, 1235; Lockett v. State, 2014 OK CR 3, ¶ 8, 329 P.3d 755, 760 (Lumpkin, J., Specially Concurring). Because the substance of Petitioner's claim is a challenge to the execution protocol, we find that Petitioner's request is not properly before the Court.

¶39 Even if we were to construe Petitioner's pleading as an application for post-conviction relief, Petitioner would not be entitled to relief. Petitioner's penalty of "death" as well as the method, lethal injection, both remain unchanged. Thus, Alberty v. State, 1914 OK CR 48, 140 P. 1025, is not applicable to the present case. In Salazar v. State, 1993 OK CR 21, 852 P.2d 729, we determined "Article 5, § 54 [of the Oklahoma Constitution] does not apply to procedural changes in the law." Id., 1993 OK CR 21, ¶ 36, 852 P.2d at 738. Statutory amendments which do not create, enlarge, diminish or destroy vested rights are generally considered remedial or procedural and operate retrospectively. State v. Watkins, 1992 OK CR 50, ¶ 6, 837 P.2d 477, 478. As 22 O.S.2011, § 1014 does not alter the penalty or method of execution but only changes the types of drugs that may be used, it is only a procedural change in the law. Petitioner has not shown that Respondent's use of a benzodiazepine rather than an ultra-short acting barbiturate will violate State law. Accordingly, Petitioner's Petition for Writ of Prohibition is DENIED. His Application for Stay of Execution is moot.

¶40 IT IS SO ORDERED.

¶41 WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 2nd day of October, 2015.

/S/CLANCY SMITH, Presiding Judge 

/S/GARY L. LUMPKIN, Vice Presiding Judge

/S/ARLENE JOHNSON, Judge 

/S/DAVID B. LEWIS, Judge 

/S/ROBERT HUDSON, Judge 

ATTEST:

/s/Michael S. Richie
Clerk

FOOTNOTES

[1] Counsel for Petitioner initially sought relief in the Federal District Court for the Northern District of Oklahoma but that court refused to consider Petitioner's claim because the requirement of federalism had not been met as the claim had not been fairly presented to the courts of the State of Oklahoma. Cole v. Trammell, 2015 WL 4132828 (N.D. Okla. July 8, 2015).

[2] The State stipulated to the admissibility of the mental health records.

[3] As a prisoner's sanity to be executed must be judged as to his present mental state when execution is imminent, we directed Petitioner to raise any claims of competency to be executed in the District Court at such time as an execution was scheduled. Stewart v. Martinez-Villareal, 523 U.S. 637, 644-45, 118 S. Ct. 1618, 1622, 140 L.Ed.2d 849 (1998).

[4] At the time of the evidentiary hearing, Petitioner identified as a "Messianic Jew." (Evid. Hrg. Tr. 102-04). Dr. Morris testified that Petitioner's desire for Kosher meals was illogical because Petitioner was not raised Jewish. (Evid. Hrg. Tr. 186-87).

[5] The record reveals that the parties and the District Court relied upon these decisions in the mandamus proceedings that are now before this Court.

[6] Morris reviewed several of Petitioner's writings (Exhibit Nos. 23-29) and opined that it was like the "codes" from "the movie The Beautiful Mind." (Evid. Hrg. Tr. 202, 233). Nothing about the writings suggests that Petitioner lacks a rational understanding of his crime and punishment.

[7] Gardner also testified that Petitioner bathed out of the top of the toilet in his cell, when, in fact, the top of the toilet was a sink. (Evid. Hrg Tr. 52, 66-67, 121, 154).






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1992 OK CR 50, 837 P.2d 477, STATE v. WATKINS
Discussed
 1993 OK CR 21, 852 P.2d 729, SALAZAR v. STATE
Discussed at Length
 1995 OK CR 77, 909 P.2d 806, CARGLE v. STATE
Discussed
 1914 OK CR 48, 140 P. 1025, 10 Okl.Cr. 616, Alberty v State
Discussed
 2002 OK CR 41, 60 P.3d 1, BEDNAR v. DISTRICT COURT OF KAY COUNTY
Discussed at Length
 2003 OK CR 6, 66 P.3d 456, MURPHY v. STATE
Discussed
 2006 OK CR 25, 137 P.3d 1234, MALICOAT v. STATE
Discussed
 2007 OK CR 19, 159 P.3d 272, PAVATT v. STATE
Discussed
 2007 OK CR 27, 164 P.3d 1089, COLE v. STATE
Discussed at Length
 2011 OK CR 31, 265 P.3d 754, ALLEN v. STATE
Discussed at Length
 2012 OK CR 7, 274 P.3d 161, NELOMS v. STATE
Discussed
 2012 OK CR 8, 281 P.3d 1283, MURPHY v. STATE
Discussed
 2012 OK CR 14, 288 P.3d 247, STATE v. STICE
Discussed
 2014 OK CR 3, 329 P.3d 755, LOCKETT v. STATE
Discussed
 2015 OK CR 6, 349 P.3d 554, STATE ex rel. PRUITT v. STEIDLEY
Discussed
 1946 OK CR 54, 169 P.2d 311, 82 Okl.Cr. 305, Bingham v State
Discussed
 1999 OK CR 12, 989 P.2d 945, 70 OBJ 946, C.L.F. v. State
Discussed
 1984 OK CR 53, 676 P.2d 1375, WOOLEN v. COFFMAN
Discussed at Length
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 701.7, Murder in the First Degree
Cited
 21 O.S. 701.9, Punishment for First Degree Murder - Penalty for Second Degree
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 1005, Prisoner becoming Insane - Question for Jury Trial
Discussed at Length
 22 O.S. 1014, Manner of Carrying Out Punishment of Death
Discussed at Length